Good morning, Mr. Thompson. Good morning, Judge Torlea, Judge Thompson, Judge Kayada. May it please the Court, I represent Mark Zimny, whose convictions are marred by two Sixth Amendment violations that we call on this Court to correct. And the first is the right to an impartial choice under the Sixth Amendment. The second is the right to an impartial jury and his right to a verdict based solely on the evidence presented in court. Individually and collectively, these errors require a new trial. Before you get started, can I just ask you a little bit more background information about your counsel of choice argument. It wasn't clear what was going on between the federal court, the state court, and what efforts the attorney of choice was trying to make to get some resolution on when the federal and state courts have conflicting schedule interests. And usually there is a procedure, a protocol set up as to how to resolve it and from the perspective of a federal judge, we always like to think we have priority. But what statements were made to the state court judge? Why wasn't there more coordination to try to get this resolved before it got this far? It's not clear why there wasn't more coordination. There isn't, as far as I know, Judge, a formal arrangement in place such as is found in the Third Circuit in the case that I cited where there is a formal agreement between the federal judges and the state court judges and there is a protocol that is invoked. Was any motion filed in the state court asking for a continued based on the fact that this case had been already continued three or four times? The record doesn't show whether there was a motion to continue, but it does show that Mr. Reddington, who is here today, did notify the court of the conflict, that is the state court in the Baptiste case, of kind of a day-by-day. The original trial date was January 20th in the state court and it was March 23rd in the federal court. So there was a two-month cushion until the 20th of January when the state case was postponed a month to February 23rd. There was still a cushion, but the state court had a problem or the March 2nd to March 5th to March 5th to another intermediate date and then finally on March 16th. The record shows in the motion that Mr. Reddington filed on March 18th in the federal court that he had been talking to the state judge about the fact that as the state trial date moved forward, it was creating a conflict with his federal trial date. At the same time, he filed a motion in the federal court, the first one was on February 19th, bringing this problem to the court's attention and asking for a continuance. But did he file anything in state court saying we have a firm date in federal court so that as these state court conflicts were arising, he appraised the state court that you can continue it, but you can't continue it to a date that's going to conflict with my federal trial obligation? The record doesn't show that, Judge Thompson, one way or the other. That is, the only parts of the state court record that are in this record are the attachments to Mr. Reddington's motions on March 4th and March 18th, in which he shows what the state court schedule has been and in which he describes his dealings with the state court judge. The state court judge basically said to him, I have your body. I'm holding you for trial and I'm putting this case over from date to date while the state tries to get its reluctant witness in. And that wasn't accomplished until March 16th. This can happen with a busy criminal defense lawyer. You can end up having two trials in two different jurisdictions scheduled at the same time. It can happen. That's chaotic. And so what basic rule do you want us to adopt? Is it per se required that the court in whichever one of those two the lawyer decides to file a motion in must continue its trial? Is that what you're arguing? I'm not arguing that either court had an obligation to continue the trial. Then if neither court had an obligation, that means Judge Sobel didn't have an obligation to continue it. What standard, short of she was required to do it, do you urge we adopt? I urge you to adopt the standard that is set up in the Pete case, the Supreme Court's case, in Gonzalez-Lopez and in Luis v. United States, which is here in federal court, there is a presumption that actually applies to the state court as well. There's a presumption that when the right to counsel of choice is put at issue by a request, that is, here Mr. Zimby, not Mr. Reddington, came to the district court with a request that it facilitate his right to counsel of choice. But in your theory, he could have filed that in either case and the same presumption as a matter of constitutional law would have applied. That is true, but he filed it in the federal case because that's where his conflict arose. Mr. Zimby didn't have any standing to do anything in the state court case. Mr. Herring, Mr. Reddington could have, as between his two cases, between the two clients, he could have talked to either one of them and, for whatever reasons, picked either one. And then you're saying once he picks one, the presumption triggers him for that one. No, what I'm saying, Judge Keada, is he attempted to reconcile those in both. That is, in the state court, he asked the judge not to continue the case forward. He asked to have that case rescheduled. But he didn't have, there was no basis for him filing a claim that the state court violated his right to counsel of choice there because Mr. Zimby wasn't in that case. Mr. Zimby's case came up here in federal court. And when he came to the federal court to ask for protection of his right to counsel of choice, the Wheat case says there's a presumption. The judge has to employ a presumption that she will protect his right to counsel unless there is some compelling interest that outweighs his right to counsel of choice that justifies not granting his right to counsel of choice. It overrides that fundamental interest. It seems to me the government has argued we should look at this very differently. What was actually filed was a motion for continuance. Yes. And it did not ask for just a brief continuance of four or five days. It repeated the claim that he needed time for preparation as well as the conflict of the other. The court then denied the motion for continuance. One of the collateral impacts of that was because of the position counsel had found himself in. Counsel was going to have to choose between one or the other. So we would consider that, but we would consider it under the balancing that we usually do and the discretionary review that we usually conduct for denial of a motion to continue. Yes, Judge Carey, I understand that. But even if you use that discretionary standard, the first question is what is the subject matter of the motion? That is, what's the purpose of the motion? The motion is a request to protect his right to counsel of choice, which was clearly asserted from the March 4th and March 18th motions. There, at that point, he didn't have a choice. Mr. Azimi didn't have a choice ever. That is, he was never involved in the state case. You say he never had a choice. It leads me to a question. How long before you knew that the federal case was not going to be postponed? How much time elapsed from the time you were appraised of the fact that the federal case was not going to be postponed? The orders were February 20th, March 18th, five days. So the important thing about Mr. Reddington's position in the defense was that he was the lead counsel of choice. That is, there was an organized team that Mr. Reddington led, and he was the trial counsel. There was one other trial lawyer on the case, but he was retained only to defend the bank fraud charges. As the court was told, back in June 2014. So there wasn't anyone else prepared to do Mr. Reddington's job. That was not taken into consideration. The judge did not consider the Sixth Amendment right to counsel of choice at all in her ruling. Thank you. Mr. Shanky, good morning. Good morning. May it please the court, V.J. Shanker for the United States. I have just a few points in response, and then of course I'm happy to take the court's questions. My colleague frames this issue as a Sixth Amendment issue, as Judge Kayada pointed out. But as we argued in our brief, this is at bottom, not a Sixth Amendment deprivation of the right to counsel of choice. This court and the Supreme Court have made abundantly clear that the Sixth Amendment is not an absolute right, and courts do have to engage in balancing in motions, in cases such as motions for continuance. That's what this court did in the Maldonado decision. And my colleague relies on the Gonzales-Lopez case that the Supreme Court there made clear that it was not, its decision had nothing to do with the court's reasonable decisions regarding its scheduling. The other point I wanted to make is that my colleague suggests that this conflict developed suddenly in the state court, and he was left to scramble at that point. But I think as some of the questions suggested, as early as November 2014, he knew that the trial date in the federal court had been set and was firm. He did not, the record does not reflect that he made any efforts at that point to block out March 2015 in the state court and say, I'm tied up in federal court at that time and I will be unavailable. Those are the only points I have to make in response. I'm happy to take the court's questions on any of the issues raised. Is there a procedure in Massachusetts state court to file a motion for protection? In other words, a motion that the court rule far in advance that you will be protected from having to appear in court on certain days because of another trial? I'm sorry, Your Honor. I don't know the answer to that. I'm a little bit more concerned from the government's perspective about what happened with the jury pool. We have one juror that the state identified who was an anonymous person on this blog site. You, the government is the entity that let the defendant know that this posting had been made. And the court did an inquiry. But when other evidence came up as to the possibility that another juror was also posting, that too was anonymous. But based upon the specific factual assertions in that post, I'm having difficulty understanding why the court didn't engage in further jury inquiry. Well, Your Honor, I think on one side of the balancing ledger here is this court's admonition that courts should not lightly haul in jurors after a verdict has been reached. To the contrary, the court has to be given specific, non-speculative, clear information that a violation has occurred, some sort of juror misconduct. All we had here with respect to the late information that came out was an anonymous blog posting. But the first one was anonymous also. So you can't distinguish based upon anonymity when both were anonymous. But the information that was posted in the first one made one juror identifiable. I'm having difficulty trying to figure out why the second jury posting wasn't easily as identifiable as far as not necessarily who the juror was, but that it was in fact a juror who accused the first anonymous juror of admitting extraneous evidence into the deliberation process, as well as making statements. Your Honor, the first posting was, I think, called for a little more inquiry. The fact that a person who claimed to be a juror said that the jury was 50-50 and there was reason to believe that this was the juror who had been excused. She specifically said, I was excused from the jury because I was sick. There was some credence to that, credibility to that, and the government agreed that this juror had to be called in for an inquiry. But the second juror, I mean, I wasn't there, of course, but the second juror, possible juror, gave information that seemed to match a description of the juror who left for sickness. Your Honor, any member of the audience who had been in the courtroom would have known the description of that juror. And as the blog postings show, there was quite a bit of interest in this case, and there were members of the audience who were posting on this blog who could describe the trial and its proceedings. But there was also the specific allegation that that juror from the beginning had been making statements about the blog. Right, but that's the issue, I guess, that we don't know if it's true or not. And, Your Honor, that's the point at which... Well, we don't know it's true, and the district court didn't make any further inquiry to determine if there was any credence to it. Right, but it was simply a blanket allegation by someone who we don't know who that person is. The fact that they described the juror and said that the juror had said to be sick was not information that anybody else couldn't have access to. This juror herself had posted on the blog that she left the jury because she was sick, and her description was readily available to anyone who was in the courtroom. So all we have is a vague and anonymous posting by someone who, and I don't know this to be true, but might have their own agenda in terms of derailing the case. We see a lot of that if you read the blog postings. There were a lot of people who had interests, in this case, on both sides. So the district judge, with the vast amount of discretion that she is granted in these situations, was given a choice between hauling in all the jurors after verdict, running up against the policy interests in intruding on the integrity of the jury, making jurors think that their deliberations are not protected, all of that against a late-breaking, vague, unsubstantiated, and anonymous posting. But you have this posting. It could be anonymous. It was anonymous, so you had two potentials. It was one of the jurors who posted it, or it was somebody else, possibly an ally of the defendant trying to get things going here. If we were to assume that it was a juror who sent that, is there anything in it that you would agree is problematic? We made the argument in our brief that even then, while it would be unsettling, it is not necessarily grounds for a new trial. And the reason is all the jurors said was that this juror had raised the existence of the blog. There was no indication that any of the jurors had read the blog. There was no indication that any extraneous information entered the jury room. But we don't know that. I mean, the problem is because there was no further inquiry, we don't know that. Right. But from the posting itself, we don't know that. And that's the question, is whether the district court had an obligation and was required. It was a violation of her abuse of discretion. It was an abuse of her discretion to not inquire further when that is all we have, is the possibility, if we assume that this occurred and that this was a juror, the possibility that the existence of this blog was mentioned to the jury. Well, if we think the evidence is sufficiently specific to have required a further inquiry, we don't necessarily have, I mean, case law doesn't dictate that there has to be a new trial. I mean, we could give a limited remedy of remanding for further inquiry of the jury. I think that's right, Your Honor. Given a choice, the government would argue that that is a preferred remedy to a grant of a new trial. I would suggest to the court, though, that that would be quite a significant remedy in the context of this case, with a jury verdict that is now over a year old. Hauling in jurors, as this court has more than once said, is against policy interests. And subjecting them to an inquiry, it's contrary to the interest in finality and to the integrity of the jury process and into frank and honest jury deliberations. Isn't it standard in the U.S. District of Massachusetts to tell the jurors they're not supposed to go online and check about it? As I understand this case, the prosecution and the defense actually knew about this blog before the trial started. That's right. And nobody told the jurors at the beginning of the case that they're not to go online, they're not to search the Internet. They're not. I thought a number of the judges were doing that automatically. From what I have seen, Your Honor, the standard instructions about accessing outside information do generally refer to the Internet. They did not here. The court did tell the jurors not to talk about the case, not to think about the case, not to engage in premature deliberations, to wait until all the evidence is in. The instructions, I would agree, were a little less specific than a lot of the instructions in the district court, but I think they were clearly sufficient to put the jury on notice that they were not to access outside information and were to wait until all the evidence was in before deliberating. Even after the government found this blog posting, the government made no request of the court to admonish the jury not to go online. I mean, there was no admonition by the court throughout the proceeding, not just at the beginning. Well, this blog posting, Your Honor, was found on August 8th. I'm sorry, may I finish the answer? Yes. It was found on August 8th, which was the same day as the verdict. Prior to that, there was no indication that anybody knew that anybody, potentially a juror, potentially an ex-juror, had posted on this blog. Thank you. Thank you, Cohen.